UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOBBI KILBURN-WINNIE and MICHELLE ALLEN-GREGORY, on behalf of themselves and all similarly situated persons, <br><br> Plaintiffs, <br><br> vs. <br><br> TOWN OF FORTVILLE, FORTVILLE WATER WORKS, and FORTVILLE UTILITIES, <br><br> Defendants. | 1:15-cv-01784-RLY-DKL |

**ENTRY ON DEFENDANTS' CONVERTED
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Bobbi Kilburn-Winnie and Michelle Allen-Gregory, had their water service disconnected after failing to pay their bills on time. Prior to the disconnection, Defendants, the Town of Fortville, Fortville Water Works, and Fortville Utilities, notified Plaintiffs about a procedure that allows customers who want to dispute the amount billed or the impending disconnection to have a hearing before the Town Council. Plaintiffs, on behalf of themselves and all similarly situated persons, allege that Defendants' procedure is so burdensome, confusing, and complicated that it violates the right to procedural due process guaranteed by the Fourteenth Amendment to the U.S. Constitution. Defendants now move for summary judgment, asserting that Plaintiffs have waived their right to bring this claim based upon the release clause in a settlement agreement from a previous case involving these same parties. From the evidence presented, the court can only find

1

that one of the named Plaintiffs, Allen-Gregory, is precluded from maintaining this suit. Therefore, the court **GRANTS IN PART** Defendants' motion.

## I. Statement of Facts

### A. *Fortville I*

In July 2014, Allen-Gregory, on behalf of herself and all other similarly situated persons, filed suit against the Town of Fortville, Fortville Water Works, and Fortville Utilities. *See Allen-Gregory v. Town of Fortville*, No. 1:14-cv-01148-RLY-DML (S.D. Ind.) ("*Fortville I*"). The Complaint was later amended to add two additional named plaintiffs. (*See Fortville I*, Filing No. 21, Second Amended Complaint). In the Second Amended Complaint, the plaintiffs alleged that the defendants violated their Fourteenth Amendment right to procedural due process by terminating their water service "without a hearing while acting under color of state law." (*Id.* ¶¶ 51-52).

In September 2014, the plaintiffs filed a Motion for Preliminary Injunction, seeking to enjoin the defendants from disconnecting water service to Fortville customers without a hearing. (*Fortville I*, Filing No. 16). Subsequently, the defendants revised their notice and disconnection procedure effective November 2014. (*Fortville I*, Filing No. 31).

In December 2014, the plaintiffs filed a second Motion for Preliminary Injunction, alleging that the defendants' new procedure did not comport with due process. (*Fortville I*, Filing No. 36). In their motion, the plaintiffs averred that the new procedure was "overly burdensome," (*id.* at 11), in part because it appeared to require four "written submissions, with some of them possibly in the alternative":

2

>(1) a request for a hearing before the Town Council if a customer disputes either the service fee or the disconnection of service; (2) a general notice of appeal; (3) a notice of a request to dispute listed charges; and (4) a notice of appeal of the service or disconnection fee.

(*Id.* at 4). In their statement of facts, the plaintiffs concluded the new procedure required "the disputing customer to submit a 'written notice of appeal' without stating what the customer will be appealing," and "le[ft] unstated what will happen if the customer disputes the 'disconnection of service,' as in the first required written notice, but does not dispute 'the listed charges' – for example, if the customer has already paid them." (*Id.*). The plaintiffs also criticized the new policy because "the customer can only determine the date of the hearing by inquiring as to the 'next regular scheduled council meeting following submission of [his/her] written notice'" as "Fortville does not . . . tell[] the customer . . . that the hearing will be on a certain date and at a certain time." (*Id.* at 5).

The plaintiffs advanced three primary arguments in order to show that they were likely to succeed on the merits: (1) "Fortville's instructions to consumers who wish to dispute water disconnections are so confusing that they do not amount to a dispute procedure," (*id.* at 7); (2) "Fortville's notice of hearing is defective in that it fails to specify time and date," (*id.* at 8); and (3) "The hearing itself will be intimidating to Fortville's water customers, and is not designed to correct typical billing problems," (*id.* at 10).

*Fortville I* was resolved by settlement at a conference with Magistrate Judge Lynch on January 23, 2015. (*Fortville I*, Filing No. 57). The court granted final approval of the class action settlement on September 10, 2015. (*Fortville I*, Filing No. 75). The

court then denied as moot the plaintiffs' Motion for Preliminary Injunction and Second Motion for Preliminary Injunction.  (*Fortville I*, Filing No. 76).

### B.  *Fortville I* Settlement Agreement

The *Fortville I* Class Action Settlement Agreement became effective October 12, 2015.  (*Fortville I*, Filing No. 58-1, Settlement Agreement ¶ 8).  It was "intended by the Settling Parties to fully, finally and forever resolve, discharge and settle all claims released herein on behalf of the Named Plaintiffs and the entire class."  (*Id.* at 1).  The Settlement Agreement defines class or class members as "[a]ll customers of the Town of Fortville, Fortville Utilities and/or Fortville Water Department from July 9, 2012 through October 31, 2014 who had their water service terminated and who paid a reconnection fee to reestablish their water service."  (*Id.* ¶ 4).

The Settlement Agreement contains a "released claims" clause:

It is the agreement and intent of the Settling Parties that this Settlement Agreement be construed and enforced as a mutual and global release. Accordingly, it is hereby agreed that upon the Effective Date of this Settlement Agreement, each Settling Party, Class Member and his, her or its respective Related Parties, shall hereby be deemed to have, and by operation of this Settlement Agreement to have fully, finally, and forever released, relinquished, discharged, and waived, against each and every other Settling Party, including their respective Related Parties, any and all claims of whatever kind or nature, from the beginning of time to the Effective Date hereof, on account of any and all loss or damages of any kind whatsoever, known or unknown, arising out of, resulting from or relating to all allegations, claims or defenses which have been raised in the Complaints in this Action. Named Plaintiffs and the Class will release any and all claims against THE TOWN OF FORTVILLE, FORTVILLE UTILITIES and FORTVILLE WATER DEPARTMENT and any affiliated entities which claims relate to the actions alleged to have violated the due process provision of the 14th Amendment to the Constitution of the United States, including pre-litigation, litigation, and post-litigation activities.  The claims released by Named Plaintiffs and the Class will include all claims that were or could

have been raised in *Allen-Gregory, et al. vs. Town of Fortville, et al.*, case no. 1:14cv1148.

(*Id.* ¶ 36 (the "Release")).

### C. The Instant Case

In this matter, Kilburn-Winnie filed suit against Defendants in November 2015. (*See* Filing No. 1, Complaint). The Complaint was later amended to add Allen-Gregory as a named Plaintiff. (*See* Filing No. 21, Amended Complaint). In the Amended Complaint, Plaintiffs allege that Defendants violated their Fourteenth Amendment right to procedural due process by terminating their water service "without a constitutionally sufficient hearing while acting under color of state law." (*Id.* ¶¶ 23, 25).

Plaintiffs assert that Defendants' hearing procedure is "so complicated and burdensome" that it violates due process for several reasons. First,

> [t]here appear to be four required written submissions, some of them possibly in the alternative: (i) a request for a hearing before the Town Council if a customer disputes either the service fee or the disconnection of service; (ii) a general notice of appeal; (iii) a notice of a request to dispute listed charges; and (iv) a notice of appeal of the service or disconnection fee.

(*Id.* ¶ 24(a)). Second, "The customer can only determine the date of his or her hearing by discovering for himself or herself the 'next regular scheduled council meeting following submission of [his/her] written notice,' since Defendants do not inform the customer of the hearing date." (*Id.* ¶ 24(b)). Third, "Defendants' procedure requires the disputing customer to submit a 'written notice of appeal' without telling the customer what he or she should be appealing." (*Id.* ¶ 24(c)). Lastly, "Defendants' procedure . . . leav[es] unstated what will happen if the customer disputes the 'disconnection of service,' as in

5

the first required written notice, but does not dispute 'the listed charges' – for example, if the customer has already paid them." (*Id.* ¶ 24(d)).

### D. Plaintiff Bobbie Kilburn-Winnie

Kilburn-Winnie alleges she failed to pay her water bill on time in both March and April 2015. (*Id.* ¶ 5). As a result, Defendants disconnected her water service. (*Id.*).

Kilburn-Winnie was a member of the settling class in *Fortville I* based upon water disconnections that occurred in February and June 2014 under Defendants' original procedure. (Filing No. 29-2, Affidavit of Joe Renner ¶ 4). Pursuant to the settlement in that matter, she received settlement proceeds. (*Id.* ¶ 5).

### E. Plaintiff Michelle Allen-Gregory

Allen-Gregory alleges that she failed to pay her water bill on time in December 2015. (Amended Complaint ¶ 6). As a result, Defendants disconnected her water service. (*Id.*).

Allen-Gregory was the original named plaintiff in *Fortville I*. (*See Fortville I*, Filing No. 1, Complaint). As a named plaintiff, she received settlement proceeds and an additional award for acting as a class representative. (*See* Settlement Agreement ¶ 29).

## II. Legal Standard

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), but the court converted the motion into one for summary judgment pursuant to Rule 12(d). Summary judgment is proper where, construing facts and drawing inferences in the light most favorable to the non-moving party, "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Roberts v. Columbia Coll. Chi.*, 821 F.3d 855, 861 (7th Cir. 2016).

### III. Discussion

Defendants move for summary judgment on one ground: waiver. They claim Plaintiffs have expressly given up the right to prosecute this action based upon unambiguous language in the Release. Before turning to the merits of that argument, the court first addresses the governing law.

### A. Applicable Law

The parties disagree as to whether state law or federal law governs the Settlement Agreement. Plaintiffs contend that federal law controls the waiver of federal constitutional rights, but Defendants maintain Indiana state law applies. Oddly, neither party mentions that the Settlement Agreement has a choice of law clause that explicitly states Indiana law applies: "This Agreement . . . shall be governed by, subject to, and construed in accordance with the laws of the state of Indiana." (Settlement Agreement ¶ 60). Because the parties expressly contracted to have Indiana law govern the Settlement Agreement, the court must apply Indiana law.

At bottom, Defendants' motion presents an issue of contract interpretation. In Indiana, the rules governing contract interpretation are well-settled:

> The ultimate goal of any contract interpretation is to determine the intent of the parties at the time that they made the agreement. We begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole. A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation. If we find ambiguous terms or provisions in the contract, we

7

>will construe them to determine and give effect to the intent of the parties at
>the time they entered into the contract.

*Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012) (citations, quotation marks, and brackets omitted). The Indiana Supreme Court has consistently "expressed its commitment to advancing the public policy in favor of enforcing contracts." *Town of Plainfield v. Paden Eng'g Co.*, 943 N.E.2d 904, 909 (Ind. Ct. App. 2011).

A release "is a species of contract that surrenders a claimant's right to prosecute a cause of action." *Zollman v. Geneva Leasing Assocs.*, 780 N.E.2d 387, 392 (Ind. Ct. App. 2002). Indiana courts generally "uphold releases as releases serve the important public policy of facilitating the orderly settlement of disputes." *Haub v. Eldridge*, 981 N.E.2d 96, 101 (Ind. Ct. App. 2012). As the Indiana Court of Appeals quipped, "Releases are not merely to pay the releasor the first installment on what he should have, leaving the matter open for the releasor to come back for more later. On the contrary, a settlement is made, and a general release taken for the purpose of foreclosing further claims." *Prall v. Ind. Nat'l Bank*, 627 N.E.2d 1374, 1377 (Ind. Ct. App. 1994) (citing *Ind. Bell Tel. Co. v. Mygrant*, 471 N.E.2d 660, 664 (Ind. 1984)). *See Estate of Spry v. Greg & Ken, Inc.*, 749 N.E.2d 1269, 1275 (Ind. Ct. App. 2001) ("If judges could interpret a release to mean something that is contrary to the plain language because one party intended for it to mean something else, then parties would be discouraged from signing releases . . . .").

The Release in this case, if enforced, would prevent Plaintiffs from suing to redress alleged due process violations if those violations were raised or could have been

raised in *Fortville I*. In other words, Defendants would have the court hold that while Plaintiffs have a constitutional right to due process, they have no way to enforce that right in this case. "To an aggrieved party a right without a remedy is doubtlessly not much better than no right at all." *Triad Assocs. v. Robinson*, 10 F.3d 492, 499 (7th Cir. 1993). Nonetheless, in *Parker v. Indiana State Fair Board*, the Indiana Court of Appeals expressly recognized that individuals may waive their rights under the Fourteenth Amendment. 992 N.E.2d 969, 979 (Ind. Ct. App. 2013). In its analysis of the issue, the *Parker* court quoted and adopted the standard outlined by the Seventh Circuit Court of Appeals in *Domka v. Portage County*: "It is without question that an individual may waive his or her procedural due process rights. A constitutional waiver is considered to be valid if it is knowing and voluntary." 523 F.3d 776, 781 (7th Cir. 2008) (citing *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). No party raised this standard in the briefing on this motion.

### B. Merits

Defendants' motion presents two issues: (1) whether the Release bars Plaintiffs' claim; and (2) if yes, whether the court can enforce the Release against Plaintiffs. The court addresses each issue in turn.

#### 1. Whether the Release bars Plaintiffs' claim

The court first considers the plain language of the Release to determine if it is ambiguous. *Barabas*, 975 N.E.2d at 813. Because a reasonable person could not find the Release subject to more than one interpretation, the court finds that it is unambiguous and

reflects the intent of the parties at the time they made the agreement. No party argues otherwise. As a result, the court must enforce the plain language of the Release. *Id.*

There can simply be no question that the plain language of the Release bars Plaintiffs' claim. The Release explicitly states, "The claims released by Named Plaintiffs and the Class will include all claims that were or could have been raised in *Allen-Gregory, et al. vs. Town of Fortville, et al.*, case no. 1:14cv1148." Plaintiffs argue that the claim advanced in *Fortville I* (that Defendants provided *no* hearing) is different from the claim advanced here (that Defendants provide an *insufficient* hearing). While that is accurate, the argument ignores the fact that the *Fortville I* plaintiffs actually did raise the insufficiency of Defendants' hearing as part of a motion for injunctive relief.

The single claim raised in Plaintiff's Amended Complaint in this case was raised in the Second Motion for Preliminary Injunction in *Fortville I*. In both the Amended Complaint and the Second Motion for Preliminary Injunction, it is alleged that the disconnection procedure Defendants adopted in November 2014 is so complicated, burdensome, and confusing that it violates the Fourteenth Amendment right to procedural due process. Specifically, both documents highlight that Defendants fail to provide Fortville customers with the date and time of their hearing. Moreover, much of the language in the Amended Complaint that directly pertains to the legal claim was directly copied from the preliminary injunction brief.

The Release further provides that the plaintiffs and the agreed class in *Fortville I* will release all claims against Defendants that "relate to the actions alleged to have violated the due process provision of the 14th Amendment to the Constitution of the

10

United States, including pre-litigation, litigation, and post-litigation activities." Put simply, any subsequent claims that are related to how the plaintiffs of *Fortville I* alleged Defendants violated the Fourteenth Amendment are expressly barred. Whereas the *Fortville I* plaintiffs raised precisely the same claim that is raised herein, it certainly relates to what was alleged in *Fortville I*. Thus, this language also bars Plaintiffs' claim. This conclusion is reinforced by the first line of the Release: "It is the agreement and intent of the Settling Parties that this Settlement Agreement be construed and enforced as a *mutual and global release*." (*Id.* (emphasis added)).

Plaintiffs attempt to escape this outcome by emphasizing certain dates. The Settlement Agreement was signed in February 2015, but Kilburn-Winnie and Allen-Gregory's water was not disconnected until March and December 2015 respectively. Because Defendants had not yet used their new procedure to terminate Plaintiffs' water service, Plaintiffs maintain they could not have alleged that the procedure violated their right to procedural due process at the time the Settlement Agreement was signed. Plaintiffs go on to "question whether anyone in *Fortville I* had standing to challenge Fortville's new hearing policy, since it had never been used." (Filing No. 47 at 3 n.2). Defendants retort the *effective date* of the Settlement Agreement was October 2015, and both Kilburn-Winnie and Allen-Gregory were experienced with the new procedure by then. Kilburn-Winnie had her water disconnected approximately seven months prior to the effective date and before she even had notice of the *Fortville I* settlement. While Allen-Gregory's water was not disconnected prior to the effective date, she contested her water bill for July-August 2015 in September 2015 under Defendants' new procedure.

11

This dispute is largely irrelevant to the waiver inquiry though. Despite Plaintiffs' claim that they simply could not have challenged the new procedure in *Fortville I*, the record reflects that they did just that in their Second Motion for Preliminary Injunction. The new procedure was implemented in November 2014, and the *Fortville I* plaintiffs filed their Second Motion for Preliminary Injunction the next month. The Release broadly bars "all claims that were or could have been raised." It does not contain an exception for claims raised without constitutional standing.

### 2. Whether the court can enforce the Release against Plaintiffs

Even though the plain language of the Release clearly bars Plaintiffs' claim, that does not necessarily mean the Release is enforceable against Allen-Gregory, Kilburn-Winnie, or potential class members. As the *Parker* and *Domka* courts held, a waiver of procedural due process rights is only valid if it is knowing and voluntary. *Parker*, 992 N.E.2d at 979; *Domka*, 523 F.3d at 781.

The court first considers Allen-Gregory. Allen-Gregory was a class representative in *Fortville I*, and she personally attended the conference with Magistrate Judge Lynch wherein the parties discussed and agreed to the terms of the settlement. (*See Fortville I*, Filing No. 57). More importantly, she signed the Settlement Agreement. (*See* Settlement Agreement at 21). "Under Indiana law, a person is presumed to understand and assent to the terms of the contracts he or she signs." *Sanford v. Castleton Health Care Ctr., L.L.C.*, 813 N.E.2d 411, 418 (Ind. Ct. App. 2004). *See Yellow Book Sales & Distrib. Co. v. JM McCoy Masonry Inc.*, 47 N.E.3d 388, 394 (Ind. Ct. App. 2015) (same). As this court noted, "[i]t is a basic tenet of contract law that a person is assumed to have read and

12

understood documents that they sign." *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1060 (S.D. Ind. 2000). Therefore, the Release is enforceable against her. The court holds Allen-Gregory knowingly and voluntarily waived her procedural due process rights. She is barred from maintaining this action, so summary judgment must be entered against her.

Kilburn-Winnie did not personally sign the Settlement Agreement because she was not a class representative in *Fortville I*. Nonetheless, as a member of the agreed class, she received the "Notice of Class Action and Proposed Settlement" (the "Class Notice"). (*See Fortville I*, Filing No. 58-2). The Class Notice provides instructions for how to obtain a copy of the Settlement Agreement and also explains that each class member will "forever release[] any claims against the Defendants" upon final approval of the settlement. Even if the court assumes that Kilburn-Winnie received the Class Notice, there is simply no evidence to suggest that she actually read it. More importantly, there is no evidence showing that she took the extra step of accessing the Settlement Agreement and reading the Release. At summary judgment, the court must construe the facts and draw all reasonable inferences in Kilburn-Winnie's favor. Accordingly, the court cannot find that she knowingly and voluntarily waived her procedural due process rights.

Without more evidence, *Parker* and *Domka* prevent the court from enforcing the Release against anyone in the agreed class from *Fortville I*. At this juncture, only the class representatives from *Fortville I* are prohibited from participating in this lawsuit. The court recognizes that this ruling strikes against Indiana's strong public policy of enforcing releases and enforcing contracts in general. This decision also overrules the

clear intent of the parties to the Settlement Agreement and the very purpose of releases. Parties include a release in settlement agreements in order to "foreclose further claims," *Zollman*, 780 N.E.2d at 392, and ensure that the matter is closed so that the releaser may not "come back for more later." *Prall*, 627 N.E.2d at 1377. Yet, at least at this stage in the proceeding, the court must allow the releasers to return with a claim Defendants reasonably believed was waived. The court is troubled by this result and its possible implications. *See Estate of Spry*, 749 N.E.2d at 1275 (warning that parties may "be discouraged from signing releases" if they do "not have confidence that a court would enforce the release's plain language").

      Despite this, the rule from *Parker* and *Domka* is clear. The court cannot enforce a waiver of a constitutional right until it is satisfied that the individual voluntarily relinquished a known right. As the U.S. Supreme Court remarked in the landmark case of *Miranda v. Arizona*, "This Court has always set high standards of proof for the waiver of constitutional rights." 384 U.S. 436, 475 (1966). Indeed, the Court previously noted, "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . we 'do not presume acquiescence in the loss of fundamental rights.'" *Zerbst*, 304 U.S. at 464. The reason for imposing a high burden is clear: "[T]he rights guaranteed by the [C]onstitution" are "sacred." *Hendrickson v. Overlade*, 131 F. Supp. 561, 563 (N.D. Ind. 1955). At least in this context, the class members' constitutional right to procedural due process trumps Indiana's public policy of enforcing contracts, the parties' contractual intent, and the plain language of the Release.

14

## IV. Conclusion

Therefore, Defendants' Converted Motion for Summary Judgment (Filing No. 27) is **GRANTED IN PART**. The court grants the motion as to Allen-Gregory, and denies the motion as to Kilburn-Winnie. The Clerk is **DIRECTED** to remove Michelle Allen-Gregory from the case caption.

Because this motion originated as one to dismiss and was converted by the court, Defendants may file a successive motion for summary judgment on different grounds by the deadline established in the Case Management Plan. The court also grants Defendants leave to renew this motion if evidence reveals that Kilburn-Winnie knowingly and voluntarily waived her due process rights.

**SO ORDERED** this 2nd day of August 2016.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.